## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

SOLAN HOLDING BV, SYNEXXUS
COMPOSITES, LLC, and PATRICK
COUGHLIN,

     **Plaintiffs,**

     **v.**

GREGORY E. GLAROS, SYNEXXUS
COMPOSITES, INC., and WILLIAM
BURNS,

     **Defendants.**

**Civil Action No:**

## <u>COMPLAINT</u>

AND NOW, come Plaintiffs Solan Holding BV ("Solan"), Patrick Coughlin ("Coughlin"), and Synexxus Composites, LLC ("Synexxus Composites"), by and through their undersigned counsel, and hereby file the within Complaint, stating the following in support thereof:

## <u>PARTIES</u>

1.    Plaintiff Solan Holding BV ("Solan") is a Dutch corporation with a principal place of business in Bloemendaal, The Netherlands.

2.    Plaintiff Synexxus Composites, LLC ("Synexxus Composites" or the "Company") is a Limited Liability Company organized under the laws of Virginia with a principal place of business at 213 Hanover Street, Annapolis, Maryland 21401, and a registered office address of 5139 10th Rd. N., Arlington, Virginia, 22205.

3.    Plaintiff Patrick Coughlin ("Coughlin") is an adult individual residing at 3902 Foster Ave., Baltimore, Maryland 21224.

4.    Defendant Gregory E. Glaros ("Glaros") is an adult individual residing at 213

1

Hanover Street, Annapolis, Maryland.

5.    Defendant Synexxus, Inc. ("Synexxus") is a Virginia Corporation with a principal place of business at 213 Hanover Street, Annapolis, Maryland, 21401, and a registered office address of 2425 Wilson Blvd Ste 400, Arlington, Virginia, 22201.

6.    Defendant William Burns ("Burns") is an adult individual residing at 8505 Prestwick Drive, La Jolla, California 92037.

## VENUE AND JURISDICTION

7.    This action arises under the federal securities laws, including § 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j) and Exchange Act Rule 10b-5 (17 C.F.R. § 240.10b5), as well as under various Virginia statutes and common law.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 15 U.S. Code § 78aa, as it presents federal questions under federal securities laws, and pursuant to 28 U.S.C. § 1367 insofar as this Court has supplemental jurisdiction over related state law claims, which are so intimately related to the violations of federal law that they form part of the same case or controversy.

9.    This Court has personal jurisdiction over Defendant Synexxus, Inc. because it is domiciled in this Commonwealth.

10.    The claims alleged against Glaros and Burns involve enforcement of liabilities and duties created under the Securities and Exchange Act related to Synexxus Composites, LLC, a Virginia Limited Liability Company.

11.    This Court has personal jurisdiction over Defendants Glaros and Burns pursuant to 15 U.S.C. § 78aa, which affords nationwide personal jurisdiction and service of process over defendants in such actions.

12.     This Court also has personal jurisdiction over Glaros and Burns pursuant to the Virginia long-arm statute (Virginia Code §§ 8:01-328.1.A) because the causes of action alleged against Glaros and Burns arise from their actions and omissions related to their transactions of business with and for Synexxus, Inc. and Synexxus Composites, LLC, both corporations organized under the laws of Virginia.

13.     Venue is proper in the Eastern District of Virginia under 28 U.S.C. §§ 1391(b) and (d) because this action arises out of all Defendants' transaction of business Virginia, Defendants are all subject to personal jurisdiction here, and Defendant Synexxus, Inc. is a resident of any district in Virginia for purposes of venue.

## FACTS

14.     Defendant Glaros is the founder, majority shareholder and CEO of Defendant Synexxus.

15.     On or around March 26, 2019, Defendant Synexxus and/or Defendant Glaros formed Synexxus Composites, a Virginia Limited Liability Company.

16.     Synexxus Composites is in the business of manufacturing and distributing composite products, including maritime vessels.

17.     Defendant Burns is the President of Synexxus, Inc., and has for some time acted as an advisor and agent of both Synexxus, Inc. and Synexxus Composites.

18.     Upon information and belief, Defendant Burns is also a shareholder of Synexxus.

19.     Upon information and belief, at the time of its formation, Synexxus Composites was a single member LLC, with 100% of the membership interests of the Company belonging to founding member and Defendant, Synexxus, Inc.

20.     At all relevant times, Defendant Glaros controlled, and still controls, all aspects of

Synexxus Composites' business endeavors, including, but not limited to, dealings with potential investors, financial records, and matter relating to intellectual property.

21.     Defendant Glaros personally made the misrepresentations alleged herein that induced Plaintiffs Solan and Coughlin to invest in Synexxus Composites.

22.     Defendant Glaros also personally made the fraudulent transfers detailed herein.

23.     Defendants Glaros, Synexxus, Inc., and Burns used the instrumentalities of interstate commerce and/or of the U.S. mail in furtherance of the fraudulent acts detailed herein, including, but not limited to, the wrongfully induced and fraudulent transfers of money sent via wire transfers.

24.     Plaintiff Coughlin was an employee of Defendant Synexxus, Inc.

25.     Plaintiff Coughlin was paid a salary by Synexxus, Inc., but also was compensated in the form of shares in the Corporation.

26.     At some point, Glaros and Coughlin agreed that Coughlin's shares in Synexxus, Inc. would convert to a 25% membership interest in Synexxus Composites.

27.     As of the conversion of Plaintiff Coughlin's shares, Synexxus, Inc. owned a 75% membership interest in Synexxus Composites, and Plaintiff Coughlin owned a 25% membership interest.

28.     Synexxus Composites is party to a contract with the India Ministry of Defence (the "IMOD") to build a maritime vessel for use in India (the "India Contract").

29.     The vessel was to be based on the M-80 Stiletto ("Stiletto"), launched in 2006 by the United States Secretary of Defense, Office of Force Transformation ("OFT").

30.     Defendant Glaros was the Project Manager employed by the OFT on the Stiletto project.

4

31.     Stiletto was unique in that, among other things, it combined the use of composite materials with patented technologies, many of which were invented by the late Charles Robinson and Defendant Burns.

32.     Charles Robinson and Defendant Burns are both named on the original patents, which were later assigned to a company they co-founded known as M Ship Co.  These patents are collectively referred to herein as the "M Ship Co. Intellectual Property."

33.     Under the terms of the India Contract, Synexxus Composites is to be paid in stages based on hitting various milestones as agreed by Synexxus Composites and the IMOD.

34.     Synexxus Composites entered into a contract with Composite Builders, LLC, the entity which would perform the physical build of the boat for the India project ("Composite Builders").

35.     In or around October 2021, Synexxus Composites began seeking financing to permit it to continue operations necessary to perform under the India Contract while it awaited payment from the IMOD.

36.     David Monks, an associate of Defendant Glaros, and a representative of Composite Builders, introduced Mr. Glaros by e-mail to Ms. Patricia Brooke Kerschbaumer, who was employed as the United States program manager and owner's representative for a high-performance carbon fiber 52-foot racing yacht under construction at Composite Builders at that time.

37.      At Glaros' request, a Composite Builders representative asked Ms. Kerschbaumer whether she would be interested in learning more about the boat project underway for the IMOD.

38.     On November 3, 2021, Ms. Kerschbaumer participated in an introductory meeting via telephone with a representative of Composite Builders, and the two members of Synexxus

Composites at the time, Defendant Glaros and Plaintiff Coughlin.

39.     During that meeting, Glaros provided information about the project and informed Ms. Kerschbaumer that he needed $2,000,000 in immediate funding.

40.     Mr. Glaros did not request a loan; he stated that he was searching for an equity partner with knowledge of the industry.

41.     Also on November 3, 2021, Glaros e-mailed Ms. Kerschbaumer a document titled "SYNEXXUS Composites LLC Request for Funding."

42.     Consistent with their discussion during the telephone conference, the Request for Funding contains the Company's "Immediate Ask" for a "Convertible note ($1.5-$2M) with 10-20% equity conversion."

43.     Ms. Kerschbaumer contacted her friend and colleague Mr. Cesar Elizaga, principal of Plaintiff Solan, to discuss this investment opportunity.

44.     Mr. Elizaga has vast history of investments and expertise in startups, carbon fiber composite construction, drones, digital technology, and shipbuilding.

45.     Solan is not in the business of lending money; it is solely an investment company.

46.     After speaking with Mr. Elizaga, Ms. Kerschbaumer e-mailed Glaros a list of due diligence questions, to which he responded the same day.

47.     Many of Ms. Kerschbaumer's questions were geared towards determining the ownership of the intellectual property necessary to fulfill the India Contract (*i.e.*, the M Ship Co Intellectual Property).

48.     In his response, Glaros represented to Ms. Kerschbaumer that "SYNEXXUS COMPOSITES LLC is a stand-alone entity.  SYNEXXUS Inc (of which the founder is the owner) funded the early development but has transferred any rights or ownership of the vessel design.  All

rights, patents and designs were transferred to SYNEXXUS Composites LLC."

49.     Prior to the conversion of Plaintiff Coughlin's Synexxus, Inc. shares into a 25% membership interest in Synexxus Composites, Glaros represented to Coughlin as well that Synexxus Composites owned all of the M Ship Co. Intellectual Property.

50.     Glaros further stated that, "The vessel was designed . . . by William Burns at M Ship Co.  M Ship Co. was dissolved April 2016.  Mr. Burns is now a key advisor for SYNEXXUS and is part of its design and engineering team."

51.     Glaros stated that "SYNEXXUS Composites owns all rights, designs and all patents.  A separate attachment is provided as proof along with its Patent portfolio.  The US Navy has acknowledged SYNEXXUS [Inc.'s] ownership in a recently renegotiated Cooperative Research and Development Agreement (CRADA)."

52.     The Patent portfolio provided by Glaros included the M Ship Co. Intellectual Property.

53.     As proof that Synexxus Composites owned all intellectual property necessary to fulfill the India Contract, including the M Ship Co Intellectual Property, Glaros sent Ms. Kerschbaumer a copy of an Intellectual Property Assignment Agreement, purportedly assigning all of the M Ship Co. Intellectual Property from Synexxus, Inc. to Synexxus Composites.

54.     The CRADA provided by Defendant Glaros as proof that the US Navy acknowledges ownership of the intellectual property related to Stiletto states that, "SYNEXXUS has conducted extensive design work in the improvement of the current platform as well as future platforms and owns all intellectual property pertaining to the vessel."

55.     In his November 3, 2021 letter, in response to Solan's question "Who owns the IP? What is the ownership history of the IP?," Glaros reiterated that "SYNEXXUS Composites LLC

owns all IP, possesses all drawings, engineering files, software, hardware, and electronic designs."

56.    After reviewing Mr. Glaros' responses and discussing them with Mr. Elizaga, Ms. Kerschbaumer sent additional inquiries the next day, November 4, 2021.

57.    Consistent with their prior discussions and Glaros' "Immediate Ask," Ms. Kerschbaumer informed Glaros that Solan was "positioned to offer 2M USD for 20% of the Company.  This can be structured as a convertible note to speed the capitalization process with assurance and guarantees that it will be converted into share capital."

58.    Glaros responded that "SYNEXXUS Composites LLC is amenable to these terms."

59.    Glaros also represented that, at the time, he owned 75% of the equity in the Company at that time and that Patrick Coughlin owned 25%.

60.    On November 6, 2021, Mr. Glaros, Mr. Coughlin, Mr. Elizaga, and Ms. Kerschbaumer had a Zoom meeting to discuss Glaros' request for an equity investment.

61.    Glaros told Mr. Elizaga and Ms. Kerschbaumer that there was no operating agreement in place for Synexxus Composites.

62.    Prior to the conversion of Plaintiff Coughlin's shares in Synexxus, Inc. to a 25% membership interest in Synexxus Composites, Glaros had also represented to Plaintiff Coughlin that no operating agreement was in place for Synexxus Composites.

63.    Glaros told Mr. Elizaga and Ms. Kerschbaumer that Synexxus Composites was being run as a member-managed LLC.

64.    The intellectual property necessary to perform under the India Contract, including the M Ship Co. Intellectual Property, and the India Contract itself, were the only assets owned by Synexxus Composites that gave the entity any value.

65.    Based on Glaros' representations to Ms. Kerschbaumer and Mr. Elizaga regarding

the intellectual property and management of the LLC, Solan agreed to invest $2,000,000 in exchange for a 20% membership interest in Synexxus Composites.

66.     Similarly, Plaintiff Coughlin's agreement to convert his shares in Synexxus, Inc. into a 25% membership interest in Synexxus Composites was made in reliance on Glaros' false representations with respect to intellectual property and management of the LLC.

67.     Mr. Elizaga noted that the investment would be covered by a debt-to-equity instrument in the form of a Convertible Note so as to ensure that all proper tax filings could be made given that he would be investing in a U.S. LLC as a foreign national.

68.     Mr. Glaros and Mr. Coughlin agreed to these terms and asked for assurance that the $2,000,000 would be considered a guaranteed conversion, and not a repayable loan.

69.     Mr. Elizaga assured Mr. Glaros and Mr. Coughlin that the $2,000,000 was a guaranteed investment and conversion, as agreed.

70.     On November 8, 2021, Synexxus Composites entered into a Convertible Promissory Note with Solan for $2,000,000.00 (the "November 2021 Note").

71.     Under the express terms of the November 2021 Note, "Synexxus Composites, LLC is a standalone entity which through proper legal conveyance has the full and unencumbered rights to manufacture, market and sell multi-role carbon vessels based upon the M80 Stiletto currently owned and operated by the United States Navy."

72.     The November 2021 Note also states that "Synexxus Composites owns all assets and intellectual property related to the M80 Stiletto vessel."

73.     In a January 2022 employment agreement between Synexxus, Inc. and Defendant Burns, Burns expressly states that he is retaining ownership of certain M Ship Co. patents.

74.     In or around February 2022, Ms. Kerschbaumer sat with Defendants Glaros and

Burns while Defendants had dinner.

75. During that meeting, Glaros told Ms. Kerschbaumer, in Defendant Burns' presence, the story of how Burns purportedly had gained the rights to the M Ship Co. Intellectual Property.

76. Defendant Burns confirmed the story and intentionally withheld the information that he was never granted any such rights.

77. Defendants Glaros and Burns knowingly and intentionally withheld the information from Plaintiffs that neither Synexxus, Inc. nor Synexxus Composites had ever owned any rights to the M Ship Co. Intellectual Property.

78. Upon information and belief, Glaros and Burns had either an express or implicit agreement to misrepresent the ownership status of the M Ship Co. Intellectual Property to potential investors, including Solan and Coughlin.

79. The November 2021 Note provided that the $2,000,000 principal would convert to a 20% membership interest in Synexxus Composites if not repaid by December 31, 2021.

80. However, as the Parties had confirmed during their November 6, 2022 Zoom meeting, the Parties had always intended that the November 2021 Note would convert to a 20% interest, and never planned for the $2,000,000 to be repaid to Solan.

81. Consistent with this understanding, Solan was immediately admitted and treated as a member of Synexxus Composites, owning a 20% membership interest.

82. Following execution of the November 2021 Note, Mr. Elizaga and Ms. Kerschbaumer, on behalf of Solan, became heavily involved in all aspects of the project, including, but not limited to, financial relations, vendor relations, government relations, website and logo design, marketing, and strategic planning and development.

83. Mr. Elizaga and Ms. Kerschbaumer were also heavily involved in procuring the

bank guarantees required by the IMOD under the terms of the India Contract.

84.     Mr. Elizaga and Ms. Kerschbaumer considered themselves and acted as partners to Glaros and Coughlin, attended weekly status meetings, conferred regarding how to expend funds, and liaised with key vendors and suppliers.

85.     Over the course of four days in March 2022, Mr. Elizaga and Ms. Kerschbaumer, along with Mr. Glaros and Mr. Coughlin, attended a series of meetings with a four-person delegation from the IMOD in Holland, MI and Washington, D.C.

86.     At these meetings, Mr. Glaros introduced Mr. Elizaga to the India delegation as the Chairman of the Board for Synexxus Composites.

87.     Mr. Glaros introduced Ms. Kerschbaumer to the India delegation as a strategic advisor for Synexxus Composites.

88.     Mr. Elizaga attended every meeting held with the delegation, both on site in Michigan, and in Washington, D.C., and Ms. Kerschbaumer was present for most meetings.

89.     Requiring further financing, Synexxus Composites entered into a second convertible note with Solan on December 20, 2021 (the "December 20, 2021 Note").

90.     Under the December 2021 Note, Solan loaned Synexxus Composites an additional $1,000,000, to be converted to a 10% equity interest if unpaid by the deadline.

91.     Although structured as a convertible note to protect Solan's interests in the event of nonpayment, all Parties expected that payments on the India Contract were imminent.  Solan never intended to own more than 20% of the Company.   The intent of the Parties was only to keep the Company afloat pending payment from the IMOD.

92.     On January 13, 2022, Solan and Synexxus Composites executed an Addendum to the December 2021 Note providing for an additional $4,000,000 in financing under the same terms

as the December 2021 Note, but with a payment due date of March 31, 2022.

93.     The consideration for Solan's additional contribution was the potential conversion of that $4,000,000.00 into an additional 40% membership interest in the Company, which was clearly understood by all parties.

94.     Pursuant to the December 2021 Note, as amended, a total of $5,000,000 was due to be repaid by March 31, 2022.

95.     The November and December 2021 Notes, as amended, are hereinafter collectively referred to as the "Convertible Notes."

96.     The December 2021 Note, as amended, also required Synexxus Composites to circulate an operating agreement to all members that would require a supermajority of 80% for approval.

97.     This provision was included because Mr. Glaros had repeatedly represented to Mr. Elizaga, Mr. Coughlin, and Ms. Kerschbaumer that Synexxus Composites was a newly formed company with no operating agreement in place.

98.     Mr. Glaros told Mr. Elizaga, Mr. Coughlin, and Ms. Kerschbaumer that he had an operating agreement in place for Synexxus, Inc. that he could revise and present as a draft operating agreement for Synexxus Composites.

99.     On or around February 10, 2022, Mr. Glaros sent a draft operating agreement for Mr. Elizaga's review with a schedule showing the respective membership interests of the parties, including Mr. Coughlin's 20% interest and Solan's 20% interest.

100.    That draft operating agreement was never shared with Mr. Coughlin or voted on by the members.

101.    Solan's purpose in providing the financing for the India Contract under the

December 2021 Note, as amended, was to protect its investment by permitting operations to continue as usual without diluting the shares of the existing Members.

102.   Solan was concerned that Synexxus Composite's financial difficulties would result in the nonpayment of employees and key suppliers, among others, who were indispensable to the project.

103.   At all times, Solan was hopeful that Synexxus Composites would be able to repay the $5,000,000.

104.   Although all hoped for prompt payment by the IMOD that would permit repayment of the loan, Solan still required consideration for the additional cash it provided the Company.  But for the potential for an additional 40% conversion, Solan would not have entered into the Addendum.

105.   As the deadline for repayment approached, Solan made at least two offers to extend the due date on the December 2021 Note.

106.   Mr. Glaros refused, stating that he would pay back the funds prior to the due date.

107.   The majority of the $5,000,000 Solan loaned Synexxus Composites went to secure bank guarantees, and at the time of the repayment deadline, the IMOD still had not paid any money.

108.   Plaintiffs Solan and Coughlin were paramount in securing the bank guarantees for Synexxus Composites.

109.   All delays in acquiring the bank guarantees were due to Glaros' poor credit, lack of understanding of complex financial instruments, and Synexxus Composites' dire financial state.

110.   Synexxus Composites was no longer able to pay its key vendors and suppliers.

111.   Solan began hearing of delayed payments and issues caused thereby, including, but not limited to, a failure on Glaros' part to pay Composite Builders in accordance with the agreed-

upon payment schedule.

112. Due to nonpayment, Composite Builders ceased working on the project, and Synexxus Composites was denied access to the buildings housing both the boat hull and the molds.

113. The due date for the $5,000,000.00 payment came and went with no communication from Glaros regarding repayment.

114. On March 31, 2022, at Glaros' request, Coughlin used $20,000 of his personal funds to help to procure an Integrity Pact Bank Guarantee required under the India Contract.

115. On April 1, 2022, the December 2021 Note, as amended, converted to a 50% membership interest in favor of Solan, which now holds a total 70% membership interest in Synexxus Composites.

116. Upon conversion of the December 2021 Note, Synexxus, Inc. held a 22.5% membership interest, and Patrick Coughlin held a 7.5% membership interest in the Company.

117. It was clear that Glaros was mismanaging the project.

118. Solan and Coughlin, the remaining members holding a cumulative 77.5% of membership interests, voted to terminate Glaros' employment and duties as an officer of Synexxus Composites.

119. Solan and Coughlin took this action to prevent the implosion of the project and a breach of the India Contract.

120. The vote to terminate Glaros' employment was done in conformance with the Virginia Limited Liability Act, which governs Synexxus Composites as a Virginia LLC.

121. Glaros was notified of his termination on April 7, 2022.

122. Glaros disputes that Solan and Coughlin have the authority to terminate his employment, despite the exercise of their powers as majority in interest.

123.   Even after Synexxus Composites defaulted on the $5,000,000 loan, Solan continued to make loans to the Company for payment of payroll and certain vendors.

124.   On April 8, 2022, Solan loaned Synexxus Composites an additional $80,000.00 to cover the Company's payroll obligations after Glaros ordered a transfer of money to the payroll company with knowledge that no funds existed to be transferred.

125.   Despite foregoing financial compensation at various times throughout his employment with Synexxus, Inc. and Synexxus Composites, Plaintiff Coughlin also made several loans to cover payroll expenses.

126.   Over time, Mr. Coughlin loaned and/or invested approximately $335,000 of his personal funds to keep Synexxus Composites and the India Contract afloat.

127.   On April 8, 2022, a little over a week after Coughlin had put up $20,000 for the benefit of the Company, Glaros sent Coughlin a letter, ostensibly terminating Coughlin's employment with the Company for a purported failure to perform in his position as COO.

128.   Mr. Coughlin never had any issues with his behavior or work performance.

129.   Mr. Coughlin often completed tasks that were not is responsibility.

130.   For example, Glaros requested that Mr. Coughlin create an operations manual for business processes.  In response, Coughlin created several processes and organization charts that Glaros never implemented.

131.   Additionally, Mr. Coughlin established key performance indicators for evaluating Synexxus Composites' performance by using the Monday.com platform.  None of these indicators were utilized by Glaros.

132.   Mr. Coughlin was able to accurately track company finances, despite Mr. Glaros' refusal to grant access to the Synexxus Composites and Synexxus Inc. inventory systems on

Quickbooks.

133.   Also on April 8, 2022, Solan learned that Glaros, on behalf of Synexxus, Inc. and Synexxus Composites, had delivered an Operating Agreement for Synexxus Composites dated April 15, 2019 to banking institutions that hold the Company's accounts.

134.   Despite their requests for documents before investing in the Company, Glaros never informed the other Members of any Operating Agreement, and expressly represented to them that none existed.

135.   The Operating Agreement ostensibly gave Mr. Glaros, as managing member of the LLC, sole power to act on behalf of Synexxus Composites.

136.   In response to Solan's letter terminating Glaros' employment, counsel for Glaros sent Solan's counsel a letter denying that Solan held a majority membership interest in Synexxus Composites.

137.   At that time, Glaros' counsel also informed Solan, for the first time, that an operating agreement was in place for Synexxus Composites which made Glaros the sole managing member.

138.   Solan has made payments to Composite Builders so that it may cover its payroll obligations and other necessary expenses.

139.   Solan has now invested over $7.25 million in Synexxus Composites.

140.   On April 25, 2022, IMOD finally paid the Stage One payment of approximately $3.2 million, which was wired to the Synexxus Composites account held with J.P. Morgan.

141.   Glaros is the only authorized signatory on the J.P. Morgan account.

142.   Prior to the circumstances giving rise to this litigation, Solan, Glaros, and Coughlin had agreed to a "Spend Plan," which designated which vendors, suppliers, etc., would be paid upon

receipt of the Stage One Payment from India.

143.    Upon information and belief, instead of making the necessary payments agreed upon by the Members, including payments due to Composite Builders, Glaros paid himself and Defendant Burns tens of thousands of dollars in "salary" payments.

144.    Upon information and belief, Glaros has also caused other Synexxus Composites monies to be wrongfully diverted to himself and his personal creditors, as well as to Synexxus, Inc.

145.    For example, Glaros has paid tens of thousands of dollars in personal tax liabilities from the Synexxus Composites bank account with JP Morgan.

146.    Glaros claims a salary of $300,000 - $400,000, despite the fact that Synexxus Composites is effectively insolvent.

147.    Glaros has also wrongfully paid Synexxus, Inc. expenses from the Synexxus Composites bank account.

148.    For example, in July 2022, Glaros authorized a $14,858 payment to a vendor in connection with a Synexxus, Inc. project with which Synexxus Composites has no affiliation.

149.    Upon information and belief, Glaros has created false, backdated purchase orders on behalf of Synexxus, Inc. to wrongfully divert money from Synexxus Composites to Synexxus.

150.    For example, on or around January 13, 2022, Glaros told representatives from the IMOD that the electronic keel vessel integration system ("EKeel") had been ordered from Synexxus, Inc. pursuant to a September 11, 2021 purchase order.

151.    In or around late March/early April 2022, Glaros created a new purchase order for EKeel for $1.5 million, and backdated that invoice to September 1, 2021, with payment terms of net 30, creating the appearance of an additional $1.5 million due from Synexxus Composites to

Synexxus, Inc.

152.   Upon information and belief, Glaros then paid Synexxus $1.5 million out of Synexxus Composite funds.

153.   Upon information and belief, Glaros also is wrongfully diverting funds to Synexxus, Inc. by having Synexxus Composites pay employees of Synexxus, Inc. with a 15-20% "mark-up" under a nonexistent services agreement between Synexxus Composites and Synexxus, Inc. (the "Services Agreement").

154.   To the extent a Services Agreement actually exists between Synexxus Composites and Synexxus, Inc., it was never disclosed to Solan as a potential investor or to either Solan or Mr. Coughlin as Members in the LLC.

155.   Glaros has repeatedly represented to Solan and Coughlin that all key vendors and suppliers have been paid, that work on the India Contract is on track, and that Glaros secured an extension of the deadline to complete performance under the India Contract due to issues related to the pandemic.  These representations are all false.

156.   Glaros even testified in a recent sworn affidavit that he personally "successfully negotiated the acceptance of a force majeure clause which will allow for the vessel to be delivered four months after the originally scheduled delivery of 12 months after contract award."  This statement is false.

157.   No extension on time to complete the India Contract has been negotiated with the IMOD.

158.   Key vendors and suppliers have not been paid in full.

159.   Work has been effectively halted on the India Contract for months.

160.   Glaros has represented to many of Plaintiff Coughlin's co-workers and associates

that he is incompetent, malicious, and dishonest.

161.    Glaros has represented to Plaintiffs' associates, co-workers, vendors, suppliers, and others, that Plaintiffs are wrongfully claiming a majority interest in Synexxus Composites, which Glaros knows to be untrue.

162.    Upon information and belief, Glaros has represented to Plaintiffs' associates, co-workers, vendors, suppliers, and others, that Plaintiffs are liars, predatory lenders, and professionally incompetent.

163.    All of these representations are false.

164.    Glaros knew at the time the representations were made, and stills knows, that all of these statements are false.

165.    Glaros has not paid numerous key vendors and suppliers, which has resulted in a complete halt in production.

166.    Glaros has not secured any extension for performance under the India Contract, and now admits that completing the project by the August 31, 2022 deadline is impossible.

167.    Neither Synexxus, Inc. nor Synexxus Composites has ever owned any rights to the M Ship Co. Intellectual Property.

168.    Defendant Burns does not, and has not, for many years, owned any rights to the M Ship Co. Intellectual Property.

169.    Glaros knew, or should have known, that Burns had no rights to the M Ship Co. Intellectual Property.

170.    Partially because Synexxus Composites does not own the M Ship Co. Intellectual Property necessary to perform under the India Contract, it is unlikely that the India Contract will survive.

19

171.    Because Synexxus Composites does not own the M Ship Co. Intellectual Property, and holds only a contract with India under which it is impossible to perform, Synexxus Composites in fact holds no assets of any value, and any membership interests purchased by Solan and Coughlin are essentially worthless.

172.    Glaros knew, or should have known, at the time he sold membership interests to Plaintiffs, that Plaintiffs were purchasing essentially valueless securities, but purposely withheld this information from Plaintiffs.

173.    Mr. Glaros' misrepresentations, mismanagement of Synexxus Composites, has resulted in significant economic and irreparable reputational harm to Plaintiffs.

## COUNT I - FEDERAL SECURITIES FRAUD
## SOLAN AND COUGHLIN AGAINST DEFENDANT GLAROS

174.    Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

175.    As described herein, Glaros and Burns made misrepresentations and omissions of material fact to Solan and Mr. Coughlin in connection with the purchase and sale of the Convertible Notes.

176.    Each of the Convertible Notes is a security.

177.    As described herein, Glaros and Burns made representations to Solan and Mr. Coughlin with respect to the ownership of the intellectual property necessary to fulfill the India Contract.

178.    Glaros knew, or at the very least, should have known, at the time he represented to Solan and Coughlin that Synexxus Inc., and/or Synexxus Composites, LLC owned all necessary intellectual property, that those statements were false.

20

179.    Burns knew, or at the very least, should have known, that neither he nor Synexxus Composites had ownership of the intellectual property necessary to perform under the India Contract.

180.    Glaros and Burns made these statements and omissions with respect to intellectual property ownership with the specific intent to induce Solan and Coughlin into investing in Synexxus Composites, LLC.

181.    As described herein, Solan and Coughlin invested in Synexxus Composites, LLC in reliance on Glaros' and Burns' misrepresentations and omissions regarding ownership of the intellectual property related to Stiletto.

182.    Solan and Coughlin's reliance on Glaros' and Burns' statements and omissions was reasonable, especially given the provision of an assignment agreement, patent portfolio, and contract with the United States Navy, all supporting Glaros' representations that Synexxus Composites owned all of the M Ship Co. Intellectual Property.

183.    As a direct and proximate result of Glaros' and Burns' misrepresentations and omissions regarding ownership of M Ship Co. Intellectual Property, Solan and Mr. Coughlin have suffered substantial damages, the exact amount to be proven at trial.

### COUNT II - VIOLATION OF VIRGINIA SECURITIES FRAUD LAWS
### SOLAN AND COUGHLIN AGAINST DEFENDANT GLAROS

184.    Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

185.    As described herein, Glaros and Burns made misrepresentations and omissions of material fact to Solan and Mr. Coughlin in connection with the purchase and sale of the Convertible Notes.

186.    Each of the Convertible Notes is a security.

187.   As described herein, Glaros and Burns made representations to Solan and Mr. Coughlin with respect to the ownership of the M Ship Co. Intellectual Property.

188.   Glaros knew, or at the very least, should have known, at the time he represented to Solan and Coughlin that Synexxus Inc., and/or Synexxus Composites, LLC owned all necessary intellectual property, that those statements were false.

189.   Burns knew, or at the very least, should have known, that neither he nor Synexxus Composites had ownership of the intellectual property necessary to perform under the India Contract.

190.   Glaros and Burns made these statements and omissions with respect to intellectual property ownership with the specific intent to induce Solan and Coughlin into investing in Synexxus Composites, LLC.

191.   As described herein, Solan and Coughlin invested in Synexxus Composites, LLC in reliance on Glaros' and Burns' misrepresentations and omissions regarding ownership of the M Ship Co. Intellectual Property.

192.   Solan and Coughlin's reliance on Glaros' and Burns' statements and omissions was reasonable, especially given the provision of an assignment agreement, patent portfolio, and contract with the United States Navy, all supporting Glaros' representations that Synexxus Composites owned all of the M Ship Co. Intellectual Property.

193.   As a direct and proximate result of Glaros' and Burns' misrepresentations and omissions regarding ownership of the M Ship Co. Intellectual Property, Solan and Mr. Coughlin have suffered substantial damages, the exact amount to be proven at trial.

### COUNT III - FRAUD
### SOLAN AND COUGHLIN AGAINST DEFENDANTS GLAROS AND BURNS

194.   Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

195.   As described herein, Glaros and Burns made misrepresentations and omissions of material fact to Solan and Mr. Coughlin in connection with the purchase and sale of the Convertible Notes.

196.   As described herein, Glaros and Burns made representations to Solan and Mr. Coughlin with respect to the ownership of the intellectual property necessary to fulfill the India Contract.

197.   Glaros knew, or at the very least, should have known, at the time he represented to Solan and Coughlin that Synexxus Inc., and/or Synexxus Composites, LLC owned all necessary intellectual property, that those statements were false.

198.   Burns knew, or at the very least, should have known, that neither he nor Synexxus Composites had ownership of the intellectual property necessary to perform under the India Contract.

199.   Glaros and Burns made these statements and omissions with respect to intellectual property ownership with the specific intent to induce Solan and Coughlin into investing in Synexxus Composites, LLC.

200.   As described herein, Solan and Coughlin invested in Synexxus Composites, LLC in reliance on Glaros' and Burns' misrepresentations and omissions regarding ownership of the intellectual property related to Stiletto.

201.   Solan and Coughlin's reliance on Glaros' and Burns' statements and omissions was reasonable, especially given the provision of an assignment agreement, patent portfolio, and contract with the United States Navy, all supporting Glaros' representations that Synexxus Composites owned all of the M Ship Co. Intellectual Property.

23

202.   As a direct and proximate result of Glaros' and Burns' misrepresentations and omissions regarding ownership of the M Ship Co. Intellectual Property, Solan and Mr. Coughlin have suffered substantial damages, the exact amount to be proven at trial.

## COUNT IV - NEGLIGENT MISREPRESENTATION
## SOLAN AND COUGHLIN AGAINST DEFENDANT GLAROS AND BURNS

203.   Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

204.   As described herein, Glaros and Burns made misrepresentations and omissions of material fact to Solan and Mr. Coughlin in connection with the purchase and sale of the Convertible Notes.

205.   As described herein, Glaros and Burns made representations to Solan and Mr. Coughlin with respect to the ownership of the M Ship Co. Intellectual Property.

206.   Glaros knew, or at the very least, should have known, at the time he represented to Solan and Coughlin that Synexxus Inc., and/or Synexxus Composites, LLC owned all necessary intellectual property, that those statements were false.

207.   Burns knew, or at the very least, should have known, that neither he nor Synexxus Composites owned the M Ship Co. Intellectual Property.

208.   Glaros and Burns made these statements and omissions with respect to intellectual property ownership with the specific intent to induce Solan and Coughlin into investing in Synexxus Composites, LLC.

209.   As described herein, Solan and Coughlin invested in Synexxus Composites, LLC in reliance on Glaros' and Burns' misrepresentations and omissions regarding ownership of M Ship Co. Intellectual Property.

210.   Solan and Coughlin's reliance on Glaros' and Burns' statements and omissions was reasonable, especially given the provision of an assignment agreement, patent portfolio, and

24

contract with the United States Navy, all supporting Glaros' representations that Synexxus Composites owned all of the M Ship Co. Intellectual Property.

211.    As a direct and proximate result of Glaros' and Burns' misrepresentations and omissions regarding ownership of the M Ship Co. Intellectual Property, Solan and Mr. Coughlin have suffered substantial damages, the exact amount to be proven at trial.

## COUNT V - DEFAMATION PER SE
## COUGHLIN AGAINST DEFENDANT GLAROS

212.    Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

213.    As described herein, Glaros has made multiple statements to third parties tending to harm Mr. Coughlin's reputation.

214.    Specifically, Glaros made false statements intending to besmirch Plaintiff Coughlin's work performance, reliability, competence, honesty, integrity, and general ability to engage in Plaintiff Coughlin's profession.

215.    Glaros knew that the statements made about Plaintiff Coughlin's work performance as detailed herein were false.

216.    Glaros made these false statements about Plaintiff Coughlin without justification or privilege.

217.    Upon information and belief, Glaros has made false statements regarding Plaintiff Coughlin's work performance both orally and in writing.

218.    Glaros made the statements with the intent to disparage Mr. Coughlin and harm his reputation in his community.

219.    The false statements Glaros made were understood by the recipients to refer to Mr. Coughlin.

220. Glaros' statements with respect to Plaintiff Coughlin are defamatory *per se*.

221. As a direct and proximate result of Glaros' defamatory statements, Plaintiff Coughlin has suffered, and continues to suffer, significant economic and reputational damages, with the exact amount to be determined at trial.

## COUNT VI – CIVIL CONSPIRACY TO COMMIT FRAUD
## SOLAN AND COUGHLIN AGAINST DEFENDANTS GLAROS AND BURNS

222. Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

223. Upon information and belief, Defendants Glaros and Burns had an agreement pursuant to which Glaros was permitted to represent that Synexxus, Inc., and later, Synexxus Composites, owned all rights in and to the M Ship Co. Intellectual Property.

224. At all relevant times, Defendant Burns has known that he has no right to use the M Ship Co. Intellectual Property, and no right to permit others to use it.

225. At all relevant times, Defendant Glaros knew, or at the very least, should have known, that Burns had no right to use, assign, or permit others to use or assign the M Ship Co. Intellectual Property.

226. Upon information and belief, Glaros and Burns agreed, whether expressly or tacitly, to wrongfully represent that Synexxus, Inc., and later, Synexxus Composites, owned all rights in and to the M Ship Co. Intellectual Property, with the intent to fraudulently induce investors such as Solan and Coughlin to invest in Synexxus Composites.

227. Solan and Coughlin relied on the false representations regarding the M Ship Co. Intellectual Property when investing in Synexxus Composites, and have suffered millions of dollars in damages as a proximate result as detailed herein.

## COUNT VII – BREACH OF CONTRACT
## COUGHLIN AGAINST DEFENDANTS GLAROS AND SYNEXXUS

228.    Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

229.    On or about April 29, 2019, Defendant Synexxus and Mr. Coughlin entered into an employment agreement covering the terms of Mr. Coughlin's employment.  A true and correct copy of that Agreement is attached hereto as Exhibit A.

230.    Under the terms of the employment agreement, Mr. Coughlin was to be paid an annual salary of $140,000.

231.    Paragraph 1(b) of the employment agreement requires Defendant Synexxus to "pay [Mr. Coughlin] (1) any compensation earned by Employee up through the date of termination as provided for below in Section 3, payable in accordance with applicable law, and (2) [reimburse] … any expenses Employee is entitled to as provided for below in Section 4."

232.    Synexxus breached the employment agreement when it failed to pay Mr. Coughlin his full compensation earned through the date of his termination.  To date, Synexxus has not made any payment to Mr. Coughlin on or after his purported termination.

233.    Synexxus breached the employment agreement when it failed to reimburse Mr. Coughlin for all expenses incurred during the course of his employment, including a $20,000 loan extended by Mr. Coughlin to Synexxus to secure an Integrity Pact Bank Guarantee.

234.    Alternatively, to the extent Mr. Coughlin's loan is not an expense under the employment agreement, a valid contract exists between Defendants and Mr. Coughlin wherein Defendants agreed to reimburse Mr. Coughlin for a $20,000 loan to the company to secure the Integrity Pact Bank Guarantee.

235.    Defendants breached the contract by failing to reimburse Mr. Coughlin the $20,000 he loaned Synexxus.

27

236.   Mr. Coughlin performed as agreed under all agreements with Defendants, including by loaning Synexxus $20,000.

237.   Mr. Coughlin has not received any payment or communication from Defendants regarding any pending or future payments of past due wages, expenses or for the loan reimbursement.

238.   As a direct and proximate result of Defendants' actions, Mr. Coughlin has suffered and continues to suffer economic damages in an amount to be proven at trial.

### COUNT VIII - FAILURE TO PAY WAGES
### COUGHLIN AGAINST DEFENDANTS GLAROS AND SYNEXXUS

239.   Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

240.   Upon termination of employment, an employee is entitled to all wages earned prior to termination; these wages must be paid on or before the day the employee would have been paid had employment not been terminated. Va. Code Ann. §40.1-29.

241.   Mr. Coughlin worked for Defendant Synexxus from April 29, 2019 until he was purportedly, and wrongfully, terminated from his employment on April 8, 2022.

242.   Defendants have not paid Mr. Coughlin the earned wages due.

243.   As a direct and proximate result of Defendants' actions, Mr. Coughlin has suffered and continues to suffer economic damages in an amount to be proven at trial.

### DERIVATIVE CLAIMS ON BEHALF OF SYNEXXUS COMPOSITES, LLC

244.   Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

245.   In addition to their claims above, Plaintiffs Solan and Coughlin bring a number of derivative claims against Glaros on behalf of Synexxus Composites.

246.   Plaintiffs have made no demand upon the Company to investigate and/or prosecute the claims set forth herein; any such demand would be futile because Glaros is alleged to be one

of the main wrongdoers in this action, and cannot make an independent evaluation of the claims against him.

## COUNT IX - CONVERSION
## SYNEXXUS COMPOSITES AGAINST ALL DEFENDANTS

247.     Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

248.     As detailed herein, Glaros, Synexxus, Inc. and Burns have all wrongfully taken and retained funds from accounts belonging to Synexxus Composites.

249.     Defendants Glaros and Burns are also taking excessive salaries, paid by Synexxus Composites, at times where Synexxus Composites was essentially insolvent.

250.     Glaros has been collecting a $300,000 - $400,000 salary per year.

251.     Burns has been collecting a $250,000 salary.

252.     As described herein, Glaros has also been paying excessive amounts of money from Synexxus Composites accounts for personal expenses, including, but not limited to, payments for his personal income and property tax liabilities.

253.     As described herein, Synexxus, Inc. has been collecting a mark-up on salaried employees with no return to Synexxus Composites, and has been paying expenses for projects totally unrelated to Synexxus Composites from the Synexxus Composites account.

254.     Defendants took these funds without privilege or justification, and retained them for their own benefit.

## COUNT X - UNJUST ENRICHMENT
## SYNEXXUS COMPOSITES AGAINST ALL DEFENDANTS

255.     Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

256.     As detailed herein, Glaros, Synexxus, Inc. and Burns have all wrongfully received and retained funds from accounts belonging to Synexxus Composites.

257.    Defendants Glaros and Burns are also taking excessive salaries, paid by Synexxus Composites, at times where Synexxus Composites was essentially insolvent.

258.    Glaros has been collecting a $300,000 - $400,000 salary per year.

259.    Burns has been collecting a $250,000 salary.

260.    As described herein, Glaros has also been paying excessive amounts of money from Synexxus Composites accounts for personal expenses, including, but not limited to, payments for his personal income and property tax liabilities.

261.    As described herein, Synexxus, Inc. has been collecting a mark-up on salaried employees with no return to Synexxus Composites, and has been paying expenses for projects totally unrelated to Synexxus Composites from the Synexxus Composites account.

262.    Defendants took these funds without privilege or justification, and retained them for their own benefit under circumstances that are manifestly unjust.

## COUNT XI – MISAPPROPRIATION AND WASTE
## SYNEXXUS COMPOSITES AGAINST GLAROS

263.    Plaintiffs re-allege and incorporate all prior paragraphs as if set forth herein in full.

264.    Defendant Glaros is in a position of trust and confidence and owes fiduciary duties to Solan, Coughlin, and Synexxus Composites.

265.    Glaros has betrayed that trust and breached his fiduciary duties to the Company and its Members by misappropriating corporate funds for his own benefit.

266.    In taking these actions, Glaros was acting for his own profit, benefit, personal advantage, and financial gain in violation of his fiduciary duties to his fellow Members and the Company.

267.    As a direct and proximate result of Glaros' conversion of Synexxus Composites funds for his own interests, Synexxus Composites has suffered, and continues to suffer, damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully seek judgment in their favor and against Defendants for the following relief on behalf of each Plaintiff, and derivatively on behalf of Synexxus Composites, LLC, for compensatory and punitive damages, treble damages where appropriate, reasonable attorneys' fees, including litigation costs and expenses, pre- and post-judgment interest, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury of all issues triable by right of jury.

Dated:  July 13, 2022                    Respectfully submitted,

/s/      Broderick C. Dunn
Broderick C. Dunn, VSB No. 74847
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 Phone
(703) 434-3510 Fax
bdunn@cookcraig.com

*Counsel for Plaintiffs Solan and Synexxus Composites, LLC*

/s/      Kraig D. Jennett

Kraig D. Jennett, VSB No. 93246
Attorney for Plaintiff Patrick Coughlin
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W., Ste. 1300 South
Washington, DC 20004
(202) 772-0913 Phone
(202) 772-0919 Fax
kjennett@clarkhill.com

*Counsel for Plaintiff Patrick Coughlin*